## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WEBER DISPLAY AND PACKAGING, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  02-7792 |
| | : | |
| PROVIDENCE WASHINGTON | : | |
| INSURANCE COMPANY, | : | |
| Defendant. | : | |

## MEMORANDUM

BUCKWALTER, J.                                                                February 10, 2003

      Presently before the Court are Defendant Providence Washington Insurance

Company's Rule 12(b)(6) Motion to Dismiss Count II of Plaintiff Weber Display and Packaging's

Complaint and Claims of Punitive Damages and Plaintiff's Brief in Opposition thereto.  For the

reasons set forth below, Defendant's Motion is **DENIED**.

## I.  BACKGROUND

      On July 27, 2000, Robert Hansbury ("Hansbury"), an employee of Plaintiff, Weber

Display and Packaging ("Weber" or "Plaintiff"), was injured while on the job.  Pl.'s Compl. at ¶ 6.

Hansbury was injured by an employee of Surehaul Transport ("Surehaul") named Charles

Solomon ("Solomon"), who drove tractor-trailers for Surehaul.  Pl.'s Compl. at ¶ 7. Although

Solomon had been instructed to attach his tractor to one particular Weber trailer, he accidentally

attached his tractor to another trailer which Hansbury was loading at the time.  Pl.'s Compl. at ¶¶

10-13.  Solomon moved the trailer and Hansbury was injured when the forklift that he was

backing up onto the trailer fell approximately four feet to the ground.  Pl.'s Compl. at ¶¶ 14-15.
Solomon admitted that he was responsible for the accident which injured Hansbury and damaged
the forklift that Hansbury was operating.  Pl.'s Compl. at ¶ 17.

Defendant, Providence Washington Insurance Company ("Providence
Washington" or "Defendant"), is the liability insurance carrier for Surehaul.  Pl.'s Compl. at ¶ 18.
Providence Washington hired James Rich ("Rich") to serve as its agent in dealing with Weber in
the above described incident.  Pl.'s Compl. at ¶ 19.

Following the accident, Hansbury was unable to carry out the duties he had
previously performed.  Pl.'s Compl. at ¶ 22.  As a result, Weber created a short-term light duty
position for Hansbury, while it was unknown whether Hansbury ever would be able to resume his
previous duties.  Pl.'s Compl. at ¶ 23.  The work performed by Hansbury while in this light duty
position was work which other salaried employees usually performed and work that computers at
Weber typically performed.  However, these responsibilities were given to Hansbury while he was
injured, so that he would have a job.  Pl.'s Compl. at ¶¶ 24, 25.  By early September, 2000,
Weber determined that Hansbury's condition was not improving, and he would not be able to
return to his pre-accident position.  Pl.'s Compl. at ¶ 26.

Knowing that Hansbury would be unable to continue his previous work, Weber
informed Rich that it was going to place Hansbury on full workers' compensation indemnity
benefits ("worker's compensation").[1]  Pl.'s Compl. at ¶ 28.  This way, Weber could be reimbursed

---

1.  Providence Washington was responsible for paying Weber for all expenses Weber incurred in providing
workers' compensation to Hansbury, but Providence Washington was not responsible for covering Weber's
expenses incurred in keeping Hansbury on light duty, until Providence Washington allegedly voluntarily assumed
this responsibility.

by Providence Washington for all the benefits it provided to Hansbury.  Weber alleges that, on

September 27, 2000, Rich requested that Weber continue to employ Hansbury in his light duty

position rather than place him on workers' compensation, and Providence Washington would

compensate Weber for all wages and benefits it paid to Hansbury while on light duty.  Pl.'s

Compl. at ¶ 29.  As a result of this conversation, Weber claims that it continued to employ

Hansbury on light duty rather than placing him on workers' compensation.  Pl.'s Compl. at ¶ 30.

On May 6, 2001, Weber again discussed whether it should keep Hansbury on light

duty with another Providence Washington agent, Charles Barber ("Barber").  Barber confirmed

that Providence Washington agreed to reimburse Weber for all wages and benefits it paid to

Hansbury while he worked on light duty, and Barber requested that Weber continue to keep

Hansbury in that position.  Pl.'s Compl. at ¶ 31.  Weber alleges that, in reliance on this

conversation, it left Hansbury in the light duty position without placing him on workers'

compensation.  Pl.'s Compl. at ¶ 32.

On August 30, 2001, Weber sent a letter to Providence Washington stating that

Hansbury's condition was not improving and Weber again questioned Providence Washington as

to whether it should keep Hansbury on light duty or place him on workers' compensation.  In this

letter, Weber also informed Providence Washington that it incurred $43,440.10 thus far from

keeping Hansbury on light duty, and Weber requested reimbursement from Providence

Washington in this amount.  Pl.'s Compl. at ¶ 33.  In response, on September 7, 2001, Providence

Washington informed Weber that it would not reimburse Weber in the amount it requested.  Pl.'s

Compl. at ¶ 34.  After learning this, Weber quickly placed Hansbury on workers' compensation in

September, 2001.  Pl.'s Compl. at ¶ 35.

In all, Weber alleges that it incurred in excess of $44,060.65 in costs by paying Hansbury wages and benefits to work in the light duty position Weber created for him from September 27, 2000 through September, 2001.  Pl.'s Compl. at ¶ 39.  Weber claims that, had Rich and Barber never represented that Weber would be reimbursed for the costs it incurred in keeping Hansbury on light duty, and had they not requested that Weber leave Hansbury in this position, Weber would have placed him on workers' compensation on September 27, 2001, back when Weber realized Hansbury would be unable to return to his previous position.

As a result of Providence Washington's alleged misrepresentations, Weber filed a Complaint alleging promissory estoppel and intentional misrepresentation by Providence Washington.  Subsequently, Providence Washington filed this Motion to Dismiss Weber's intentional misrepresentation claim.  Weber's intentional misrepresentation claim is based on the theory that Providence Washington intentionally misrepresented to Weber that it would reimburse Weber for expenses incurred in maintaining Hansbury as a light duty employee.  Providence Washington made these misrepresentations in order to induce Weber to continue paying wages and benefits to Hansbury.  Weber believes Providence Washington would want to induce this conduct from Weber because, absent a contract, Weber would not be entitled to recover these light duty costs from Providence Washington, whereas Weber would be entitled to recover all costs it incurred while Hansbury was on workers' compensation.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) is granted where the plaintiff has failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  This motion "may be granted only if, accepting all well-pleaded allegations in the complaint as true, and

viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." Maio v. Aetna, Inc., 221 F.3d 472, 481 (3d Cir. 2000).  While the court must accept all factual allegations in the complaint as true, it "need not accept as true 'unsupported conclusions and unwarranted inferences.'" Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184-85 (3d Cir. 2000), *quoting* City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1997).  In a 12(b)(6) motion, the defendant bears the burden of persuading the court that no claim has been stated.  Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

## III.  DISCUSSION

Providence Washington filed this Motion to Dismiss Plaintiff's intentional misrepresentation claim, because Providence Washington believes this claim is barred by Pennsylvania's "gist of the action" doctrine.[2]  Under the "gist of the action" doctrine, a plaintiff cannot maintain a tort claim where it is essentially identical to a breach of contract action.  Etoll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. 2002).

> When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort; a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious.

Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F.Supp.2d 644, 651 (W.D. Pa. 1999), *citing* Wood & Locker, Inc. v. Doran & Assoc., 708 F.Supp. 684, 689 (W.D. Pa. 1989).

The difference between tort and contract actions is noted by the fact that tort actions arise where a party breaches a duty imposed as a matter of social policy; whereas contract

---

2.  Both parties agree that Pennsylvania law governs this action.  Def.'s Br. in Supp. of Mot. Dismiss at 3; Pl.'s Br. in Opp. at 5.

actions arise where a party breaches a duty imposed by mutual consensus between the parties.

Phico Ins. Co. v. Presbyterian Med. Servs. Corp., 444 Pa. Super. 221, 229 (1995).  Thus, where

the gist of the claim is that a party failed to fulfill the terms of an agreement, the aggrieved party

cannot try to mask its claim as a tort claim.  See Sunquest, 40 F.Supp.2d at 651.  However,

"[a]lthough mere non-performance of a contract does not constitute a fraud, it is possible that a

breach of contract also gives rise to an actionable tort."  Closed Circuit Corp. v. Jerrold Elecs.

Corp., 426 F.Supp. 361, 364 (E.D. Pa. 1977).

Providence Washington argues that Weber's intentional misrepresentation claim is

actually a breach of contract claim, because the gravamen of the claim is that Providence

Washington allegedly failed to fulfill its promise to reimburse Weber for the costs it incurred in

keeping Hansbury on light duty.  On the other hand, Weber argues that its claim rightly sounds in

tort, because Rich and Barber lied about their intentions so as to induce Weber to keep Hansbury

in a light duty position.  According to Weber, it never would have entered into the agreement to

keep Hansbury on light duty without Providence Washington's alleged false promises.  Weber

believes its claim is not one of fraud in the performance of the contract, but rather, one of fraud in

the inducement of the contract.  As such, Weber believes the "gist of the action" doctrine does

not bar its claim.

Many courts have struggled with whether the "gist of the action" doctrine applies

to fraud cases.  See Etoll, 811 A.2d 10.  In the past, the Eastern District, applying Pennsylvania

law, has held that the "gist of the action" doctrine can apply to fraud cases.  See Id.  See also

Foster v. Northwestern Mut. Life, No. 02-2211, 2002 U.S. Dist. LEXIS 15078, at *7-8 (E.D. Pa.

July 25, 2002) (suggesting that fraud in the inducement of a contract may not be covered by the

6

"gist of the action" doctrine, but that fraud within the performance of a contract is); <u>Galdieri v. Monsanto Co.</u>, No. 00-1113, 2002 U.S. Dist. LEXIS 11391, at *33-34 (E.D. Pa. May 7, 2002) (holding that the "gist of the action" doctrine barred the plaintiff's fraud claims, because the fraud claims and the breach of contract claims were "intertwined" with one another); <u>Caudill Seed & Warehouse Co. v. Prophet 21, Inc.</u>, 123 F.Supp.2d 826, 833-34 (E.D. Pa. 2000) (holding that buyer's fraud claim based upon seller's failure to keep its repeated promises that its software would work was barred by the "gist of the action" doctrine, because the agreement was not collateral, but rather "at the heart" of the fraud claim).   However, as the Pennsylvania Superior Court has recently held, the cases appear to apply the doctrine where the claims are for fraud in the performance of the contract, but not where the claims are for fraud in the inducement of the contract.   <u>Etoll</u>, 811 A.2d at 19.  "[F]raud in the inducement of a contract would not necessarily be covered by [the 'gist of the action'] doctrine because fraud to induce a person to enter into a contract is generally collateral to (<i>i.e.</i>, not 'interwoven' with) the terms of the contract itself." <u>Etoll</u>, 811 A.2d at 17, <i>discussing</i> <u>Foster</u>, 2002 U.S. Dist. LEXIS 15078.

Weber's intentional misrepresentation claim seems to rely on its allegation that Providence Washington used fraud to induce Weber to engage in an agreement to keep Hansbury on light duty.  Weber alleges that Providence Washington purposefully induced Weber to avoid placing Hansbury on workers' compensation so that Providence Washington could reduce the sum which it would ultimately owe to Weber.  Pl.'s Compl. at ¶¶ 58-62.  While it is not clear that such alleged fraud in the inducement is not subject to the "gist of the action" doctrine, case law does seem to suggest that, where the fraud is used to induce the other party to enter into the contract, the contract is collateral to the fraud.  <u>See</u> <u>Foster</u>, 2002 U.S. Dist. LEXIS 15078, at *7-

8. Without Providence Washington's alleged misrepresentation, Weber would never have entered into an agreement to keep Hansbury on light duty. Therefore, the fraud appears to be the gravamen of this claim rather than the contract which occurred as a result of the alleged fraud.

Furthermore, courts have cautioned against deciding whether the gist of an action is in contract or tort at the motion to dismiss stage of a proceeding. Caudill, 123 F.Supp. at 834. Often times, without further evidence presented during discovery, the court cannot determine whether the gist of the claim is in contract or tort. See Foster, 2002 U.S. Dist. LEXIS 15078, at *7-8. In the instant matter, it would be inappropriate to dismiss Weber's intentional misrepresentation claim at this stage of the proceeding, before any discovery is conducted which could aid in a determination of the "gist" of this claim. As such, Weber is entitled to maintain its intentional misrepresentation claim at this time. However, Weber should be aware of the "gist of the action" doctrine as discovery proceeds.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is denied. An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| WEBER DISPLAY AND PACKAGING, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  02-7792 |
| | : | |
| PROVIDENCE WASHINGTON | : | |
| INSURANCE COMPANY, | : | |
| Defendant. | : | |


**ORDER**

AND NOW, this 10th day of February, 2003, upon consideration of Defendant

Providence Washington Insurance Company's Rule 12(b)(6) Motion to Dismiss Count II of

Plaintiff Weber Display and Packaging's Complaint and Claims of Punitive Damages (Docket No.

4) and Plaintiff's Brief in Opposition thereto (Docket No. 5), it is hereby **ORDERED** that

Defendant's Motion is **DENIED**.


BY THE COURT:


_____
RONALD L. BUCKWALTER, J.